___

SO ORDERED,

**Judge Katharine M. Samson**
United States Bankruptcy Judge
Date Signed: January 24, 2018

The Order of the Court is set forth below. The docket reflects the date entered.
___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: NATIONAL TRUCK FUNDING LLC<br>AMERICAN TRUCK GROUP LLC | CASE NO. 17-51243-KMS |
| DEBTORS | CHAPTER 11 |
| NATIONAL TRUCK FUNDING LLC<br>AMERICAN TRUCK GROUP LLC | PLAINTIFFS |
| V. | ADV. NO. 17-06049-KMS |
| YOLO CAPITAL INC., HANNAH BABY LLC,<br>FIRST UNITED MANAGEMENT INC.,<br>THE MOONPIE LIMITED PARTNERSHIP d/b/a<br>MOONPIE FLP | DEFENDANTS |

## OPINION AND ORDER DENYING
## MOTION AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on the Motion for Partial Summary Judgment (Adv. Dkt. No. 7)[1] by Plaintiffs National Truck Funding LLC ("NTF") and American Truck Group LLC ("ATG") (together, "Debtors"); and the Cross-Motion for Partial Summary Judgment (Adv. Dkt. No. 11) by Defendants Yolo Capital Inc., Hannah Baby LLC, First United Management Inc., and Moonpie FLP (collectively, "Creditors"). This proceeding is within the bankruptcy court's core

___

[1] Unless otherwise stated, citations to docket entries in the adversary proceeding appear as "Adv. Dkt. No. ___" and citations to docket entries in the underlying bankruptcy case appear as "Case Dkt. No. ___." Pagination in both citation forms is the ECF page number.

jurisdiction. *See* 28 U.S.C. § 157(b)(2)(K) ("determinations of the validity, extent, or priority of liens").

The ultimate issue before the Court is whether the Creditors have a valid, perfected security interest in cash proceeds—specifically, in monies that NTF receives as rental payments ("Payments") for the semi-trucks ("Trucks") it leases to individual independent operators under rental contracts ("Rental Agreements"). To fully resolve the dispute would require determining under Count One of the three-count Complaint whether the Creditors have valid, perfected security interests in the Trucks themselves. (*See* Compl. ¶¶ 28-31, Adv. Dkt. No. 1 at 10.) At this juncture, however, and only for the purposes of the Motion and the Cross-Motion, the Court assumes that relief under Count One has been denied, meaning that the Creditors do have valid, perfected security interests in the Trucks. (*See* Agreed Order, Case Dkt. No. 604 at 4.) Summary judgment is thus considered only for Counts Two and Three.

Assuming the Creditors' perfected security interests in the Trucks, the question under Count Two is whether the Creditors then perfected a security interest in the Rental Agreements as proceeds. (Compl. ¶¶ 32-35, Adv. Dkt. No. 1 at 10-11; Debtors' Br., Adv. Dkt. No. 7-1 at 3-4.) The question under Count Three is whether the Creditors have any basis besides the Rental Agreements on which to claim a security interest in the Payments. (Compl. ¶¶ 36-39, Adv. Dkt. No. 1 at 11-12; Debtors' Br., Adv. Dkt. No. 7-1 at 3-4.)

Under Article 9 of the Uniform Commercial Code, payments under a lease are proceeds of the original collateral. The Creditors thus have a basis besides the Rental Agreements on which to claim a security interest in the Payments. The Motion is therefore denied without reaching the question of whether the Creditors perfected a security interest in the Rental Agreements.

Yet to resolve, however, is whether the Payments are identifiable such that a security interest could be perfected. The Cross-Motion, which seeks an order that the Creditors have a valid and perfected security interest in the Payments, is therefore also denied.

## UNDISPUTED FACTS

The following facts were submitted by the Debtors and, except for the fifth fact, were adopted by the Creditors as undisputed and material:[2]

> 1. NTF and ATG are each organized under the laws of Nevada. NTF developed a national market that serves independent semi-truck operators from over thirty (30) states by providing them with access to semi-trucks through a weekly renewable rental program with an option to purchase. By offering low down payments and affordable monthly payments through the Rental Agreements, NTF has created an opportunity for individuals who desire to be self-employed to support themselves and their families.
>
> 2. NTF generates revenue from multiple sources based on maintaining frequent contact with the renters of its semi-trucks and by partnering with those renters on the operation, use, and repair of the vehicles. Revenue sources include fees from the Rental Agreements, forfeited deposits, compliance and other fees, as well as vehicle sales to contracted renters and other customers.
>
> 3. On June 25, 2017, the [sic] NTF and ATG each filed voluntary petitions for bankruptcy relief pursuant to Chapter 11 of Title 11 of the United States Code . . . in this Court. The cases are being jointly administered.
>
> 4. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.
>
> 5. At certain times prepetition, each of the [Creditors] made loans to NTF in exchange for security interests in the Trucks.
>
> 6. None of the [Creditors] filed a financing statement describing the Rental Agreements with the Nevada Office of the Secretary of State.

(Adv. Dkt. No. 7-1 at 2-3 (footnotes omitted); Adv. Dkt. No. 12-3 at 1.)[3]

---

[2] The fifth fact was admitted in the Answer. (*See* Compl. ¶ 17, Adv. Dkt. No. 1 at 5; Answer ¶ 17, Adv. Dkt. No. 4 at 3.)

[3] The additional facts submitted by the Creditors either state an assertion (*see* Ex. C ¶ 2, Adv. Dkt. No. 12-3 at 1); are adequately expressed in one of the Debtors' facts (*compare* Ex. C ¶ 6, Adv. Dkt. No. 12-3 at 1 *with* Debtors' Br., Statement ¶ 1, Adv. Dkt. No. 7-1 at 2); relate to individual Trucks (*see* Ex. A ¶ 5, Adv. Dkt. No. 12-1 at 1; Ex. C ¶ 7,

## CONCLUSIONS OF LAW

### I. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (applying Rule 56 to adversary proceedings). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). A party asserting that a fact either is genuinely disputed or cannot be genuinely disputed must support the assertion by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The moving party bears the initial responsibility of informing the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party presents the . . . court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the nonmovant must meet its burden with more than metaphysical doubt, conclusory

---

Adv. Dkt. No. 12-3 at 2); or are material only to a determination under Count One as to whether the Creditors properly perfected their security interests in the Trucks (*see* Ex. A ¶¶ 1, 2, 4, Adv. Dkt. No. 12-1 at 1; Ex. C ¶¶ 3, 4, 5, Adv. Dkt. No. 12-3 at 1).

4

allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

On cross-motions for summary judgment, each movant must establish the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.*

## II. The Applicable Law Is the Uniform Commercial Code as Adopted by Nevada.

Perfection of the security interests here is governed by the Uniform Commercial Code as adopted by Nevada, which is virtually identical to the UCC as adopted by Mississippi. Under the UCC in both states, "[a] registered organization that is organized under the law of a state is located in that state." Nev. Rev. Stat. § 104.9307(5); Miss. Code Ann. § 75-9-307(e). Because NTF was organized in Nevada, it is located in Nevada. "[W]hile a debtor is located in a jurisdiction, the law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." Nev. Rev. Stat. § 104.9301(1); *see also* Miss. Code Ann. § 75-9-301(1). Because NTF is located in Nevada, the Nevada UCC applies.[4] As to perfection of the security interests in the Trucks, however, Nevada law defers to Mississippi law because Mississippi issued the certificates of title for the Trucks. *See* Nev. Rev. Stat. § 104.9303(3).

The Creditors argue that this matter "is wholly outside the scope of the . . . UCC" (Adv. Dkt. No. 12 at 6) because Mississippi's motor vehicle title law "creates its own perfection scheme" (*id.* at 4 (citing Miss. Code Ann. 63-21-43(2)). As to the perfection scheme, the Creditors are partially correct. The Mississippi Motor Vehicle and Manufactured Housing Title Law ("MV Title

---

[4] Notwithstanding, this Opinion and Order also provides parallel citations to the Mississippi UCC.

5

Law"), Miss. Code Ann. §§ 63-21-1 to -77, provides under most circumstances the exclusive method of perfecting and giving notice of security interests in vehicles of a type for which a certificate of title is required. *See* Miss. Code Ann. § 63-21-43(1), -45, -55. A certificate of title is required for semi-trucks as "motor vehicles" under the statute. *See* Miss. Code Ann. 63-21-5(l). The MV Title Law does not, however, on its face provide a method for perfection of proceeds when a vehicle serves as collateral.

The Creditors argue that the Mississippi Supreme Court "extended the perfection under the MV Title Law not only to the vehicle itself, but to settlement proceeds of a casualty loss arising from the destruction of the titled motor vehicle." (Adv. Dkt. No. 12 at 4 (citing *Nationwide Ins. Co. v. Bank of Forest*, 368 So. 2d 1273 (Miss. 1979).) But the Creditors misunderstand *Nationwide*. There, the lienholder bank sued the insurance company, Nationwide, for wrongful conversion of the vehicle when Nationwide settled an accident claim without first checking the vehicle's title, where the lien would have been noted under the MV Title Law. 368 So. 2d at 1274-75. The trial court held that Nationwide was liable to the bank in the amount of the lien, and the Mississippi Supreme Court affirmed on the following basis: "We are of the opinion that Nationwide acted without reasonable prudence in settling . . . without ascertaining the status of the title from the motor vehicle registration statutes." *Id.* at 1276.

*Nationwide* thus does not "stand[] for the proposition that a perfected lien under the MV Title Law extends beyond the actual collateral itself to include funds received on account of its destruction" (Adv. Dkt. No. 12 at 6). *Nationwide* stands for the proposition that "ordinary prudence, at the very minimum, would require a cursory investigation of title" before an insurance company settles an accident claim, 368 So. 2d at 1276. As a result, *Nationwide* does not extend the applicability of the MV Title Law to the questions at issue here.

6

### III. **The Payments Are Proceeds of the Trucks.**

As the Creditors observe (Adv. Dkt. No. 12 at 7), both sides agree that the following provisions of Article 9 of the UCC apply: "A security interest attaches to any identifiable proceeds of collateral." Nev. Rev. Stat. § 104.9315(1)(b); Miss. Code Ann. § 75-9-315(a)(2). "'Collateral' means the property subject to a security interest . . . ." Nev. Rev. Stat. § 104.9102(1)(l); Miss. Code Ann. § 75-9-102(a)(12). And "collateral" includes "[p]roceeds to which a security interest attaches." Nev. Rev. Stat. § 104.9102(1)(l)(1); Miss. Code Ann. § 75-9-102(a)(12)(A).

The crux of the parties' disagreement is the term "proceeds." The Debtors argue that the Rental Agreements, not the Payments, are the proceeds of the Trucks as the original collateral; the Creditors argue that even if the Rental Agreements are proceeds, the Payments are proceeds of the Trucks too.

There is a dearth of case law on the question of whether lease payments are proceeds of the original collateral under the current version of Article 9. However, under the rules of statutory construction and the analysis by the UCC's primary interpretive body, the Payments are proceeds of the Trucks.

### A. **The Rules of Statutory Construction**

"Proceeds" means in relevant part the following property: "Whatever is acquired upon the sale, lease, license, exchange or other disposition of collateral . . . ." Nev. Rev. Stat. § 104.9102(1)(kkk)(1); Miss. Code Ann. § 75-9-102(a)(64)(A). The Rental Agreements are leases constituting the disposition of the Trucks as collateral, and under the plain language of the statute, what is acquired upon that disposition are the Payments.

The rules of statutory construction support this reading. Unless a statute is ambiguous, the court does not look beyond its plain language unless it is clear that the drafters intended the words

7

to have some meaning other than their definite and ordinary meaning. *Harris Assocs. v. Clark Cty. Sch. Dist.*, 81 P.3d 532, 534 (Nev. 2003). Here, the statute is not ambiguous and there is no indication that any words were used other than as commonly understood. The statute thus means what it says on its face.

The Debtors, however, argue that this reading violates another rule of statutory construction, which requires that statutes be construed "to give meaning to all of their parts and language, . . . read[ing] each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation." *Id.* According to the Debtors, if the Payments are proceeds of the Trucks, two of the three paragraphs (a), (b), and (c) in the following subsection are rendered meaningless:

> 4. A perfected security interest in proceeds becomes unperfected on the 21st day after the security interest attaches to the proceeds unless:
>
>> **(a) The following conditions are satisfied:**
>>
>>> (1) A filed financing statement covers the original collateral;
>>>
>>> (2) The proceeds are collateral in which a security interest may be perfected by filing in the office in which the financing statement has been filed; and
>>>
>>> (3) The proceeds are not acquired with cash proceeds;
>>
>> **(b) The proceeds are identifiable cash proceeds; or**
>>
>> **(c) The security interest in the proceeds is perfected when the security interest attaches to the proceeds or within 20 days thereafter.**

Nev. Rev. Stat. § 104.9315(4)(a)-(c) (emphasis added); *see also* Miss. Code Ann. § 75-9-315(d)(1)-(3). The Debtors argue that if the Payments are proceeds of the Trucks, paragraphs (a) and (c) collapse into "cash proceeds" in paragraph (b), because any proceeds "can always, eventually, sooner or later, be cash." (Adv. Dkt. No. 7-1 at 23.)

8

But this argument is misplaced. This subsection means only that a perfected security interest automatically continues beyond twenty days in two kinds of proceeds: proceeds in which a security interest may be perfected by the same method as the security interest in the original collateral under paragraph (a); and **identifiable** cash proceeds under paragraph (b). In other words, it is not enough for the Payments to be cash proceeds; unless they are "identifiable," the security interest in the Payments becomes unperfected on the twenty-first day after the security interest attaches unless either paragraph (a) or (c) applies. Thus, nothing about the operation of paragraph (b) renders paragraphs (a) and (c) meaningless.

### B. Commentary of the Permanent Editorial Board of the UCC

The Permanent Editorial Board of the UCC stated unequivocally more than twenty-five years ago that rental payments constitute proceeds of collateral consisting of goods. *See* U.C.C. Text App. A, PEB Commentary No. 9 § 9-306(1) at 2-3 (June 25, 1992). Although PEB No. 9 was issued under a previous version of Article 9 that did not explicitly include "lease" as a disposition of collateral,[5] the PEB apparently did not consider the omission meaningful. Concurrent with the issuance of PEB No. 9, the Official Comments to the UCC were amended to add: "Where a debtor has granted to a secured party a security interest in goods and the debtor later leases those goods as lessor, the lease rentals constitute proceeds of the secured party's collateral consisting of the goods." *Id.* at 3.

The Debtors, attempting to turn this statement to their advantage, argue that the hypotheticals discussed in PEB No. 9 are consistent with their view that the proceeds of the Trucks are the Rental Agreements. (Adv. Dkt. No. 14 at 14-15.) The Debtors ignore, however, that the

---

[5] "Proceeds" previously included "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." UCC § 9-306.

PEB singled out two examples of actual cases it believed were wrongly decided. *See* PEB No. 9 at 2.

The fact pattern in the two cases the PEB rejected is in all material ways exactly like the fact pattern here. In the first case, the court ruled that a secured creditor that held a perfected first lien against a crane had a lien as to proceeds, but no security interest in the money the debtor received as rent when the debtor leased the crane without the creditor's consent. *Gen. Elec. Credit Corp. v. Cleary Bros. Constr. Co. (In re Cleary Bros. Constr. Co.)*, 9 B.R. 40 (Bankr. S.D. Fla. 1980). That court believed the UCC provided only one way to create a security interest in rent: "The way to create a security interest in rent under the U.C.C. is to assign the lease or give a security interest in the lease. The rent would then be the proceeds of the collateral . . . ." *Id.* at 41. Because there was no such assignment or security interest given in the lease, the rents were not proceeds. *Id.* In the second case, the court ruled on facts "almost identical" to those in *Cleary Bros.* that "proceeds do not include rental payments when the security interest does not cover the lease of the collateral." *United States v. Friend (In re A.E.I Corp.)*, 11 B.R. 97, 101 (Bankr. E.D. Pa. 1981). The PEB stated that these cases, "to the extent that they hold that a subsequent lease of goods **or payments thereon** cannot constitute proceeds of a secured party's pre-existing collateral consisting of the goods," were "not consistent" with its analysis. PEB No. 9 at 2 (emphasis added). Yet this is precisely the ruling the Debtors urge here.

An Official Comment to the current Article 9 shows that PEB No. 9 informed the explicit inclusion of "lease" as a disposition of collateral in the revision: "The revised definition of 'proceeds' expands the definition beyond that contained in the former Section 9-306 **and resolves ambiguities in the former section**." Nev. Rev. Stat. § 104.9102, U.C.C. cmt. 13 (emphasis

10

added); Miss. Code Ann. § 75-9-102, U.C.C. cmt. 13. Thus, under the analysis of PEB No. 9 as carried forward into the current Article 9, the Payments are proceeds of the Trucks.

## CONCLUSION

For the Creditors to ultimately prevail in this adversary proceeding, it is necessary but not sufficient that the Payments be proceeds of the Trucks. The Creditors must also have perfected security interests in the Payments. Assuming the Creditors' perfected security interests in the Trucks, that perfection continued automatically in the Payments: "A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected. Nev. Rev. Stat. § 104.9315(3); Miss. Code Ann. § 75-9-315(c). But a security interest in cash proceeds becomes unperfected on the twenty-first day after attachment unless the proceeds are "identifiable." Nev. Rev. Stat. § 104.9315(4)(b); Miss. Code Ann. § 75-9-315(d)(2).

Because whether the Payments are "identifiable" is an issue of material fact, the Creditors are not entitled to partial summary judgment. And because the Trucks are a basis on which the Creditors may claim a security interest in the Payments, the Debtors are not entitled to partial summary judgment.

## ORDER

**IT IS HEREBY ORDERED** that both the Motion for Partial Summary Judgment (Adv. Dkt. No. 7) and the Cross-Motion for Partial Summary Judgment (Adv. Dkt. No. 11) are **DENIED**.

## *END OF ORDER* ##